## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SEAN E. MCDONALD,

                      Plaintiff,

    v.                                                                    Case No. 5:24-cv-03019-HLT

GREG DIMARZO,

                      Defendant.

---

### Defendant's Motion for Summary Judgment and Brief

Defendant Greg DiMarzo moves, pursuant to Fed. R. Civ. P. 56 and D.Kan. 56.1, for judgement as a matter of law and submits the following brief in support.

### Nature of the Case

Plaintiff brings this *pro se* suit against Corrections Officer Greg DiMarzo. Plaintiff was housed at the Larned State Correctional Facility (LSCF) in October of 2023. DiMarzo was on duty the evening of October 30, 2023. Plaintiff requested a visit to the nurse and DiMarzo told Plaintiff to fill out a call slip. Plaintiff did not tell DiMarzo that Plaintiff was contemplating self-harm or suicide. Nonetheless, Plaintiff ended up harming himself using a safety razor to inflict minor injuries to his wrists. Plaintiff claims that DiMarzo was deliberately indifferent to Plaintiff's serious medical needs for failing to take him to the nurse when asked. DiMarzo denies being deliberately indifferent. DiMarzo is entitled to judgment as a matter of law because:

1. Plaintiff McDonald failed to timely exhaust administrative remedies as required by the Prison Litigation Reform Act, which bars McDonald's claims.

2. The summary judgment records shows Defendant DiMarzo was not deliberately indifferent to any serious medical need of which his was aware and he is entitled to qualified immunity.

**Statement of Facts**

1.    Plaintiff was incarcerated at LSCF in October of 2023. Exhibit B – Plaintiff Deposition Exhibit 1; Exhibit C – DiMarzo Affidavit ¶¶ 2-3; Exhibit D – McDonald dep., 9:5-16.

2.    Defendant DiMarzo was employed as a Corrections Officer I at Larned State Correctional Facility in October of 2023. Exhibit C – DiMarzo Affidavit ¶ 1.

3.    On October 30, 2023, Defendant DiMarzo was on shift, beginning at 10:00 p.m., and ending at 6:00 a.m. on October 31, 2023. Exhibit C – DiMarzo Affidavit ¶ 4.

4.    Defendant DiMarzo conducted his first security and accountability check of the evening at 10:03 p.m. Exhibit C – DiMarzo Affidavit ¶ 4.

5.    During his first round of checks, Plaintiff told Defendant DiMarzo that he was "hearing voices" and that he "didn't want to go on crisis level" and asked to see the nurse on duty. Exhibit C – DiMarzo Affidavit ¶ 4; Exhibit D – McDonald dep., 10:5-13.

6.    Defendant DiMarzo told Plaintiff to submit a sick call slip. Exhibit C – DiMarzo Affidavit ¶ 4; Exhibit D – McDonald dep., 10:5-13.

7.    Plaintiff McDonald did not state to Defendant DiMarzo that McDonald was having thoughts of self-harm or suicide. Exhibit D – McDonald dep., 24:2-10; Exhibit C – DiMarzo Affidavit ¶ 14.

8.    Defendant DiMarzo did not construe McDonald's statements as thoughts of self-harm. Exhibit C – DiMarzo Affidavit ¶ 14.

9.    Defendant DiMarzo knew that if an inmate reported thoughts of self-harm or suicide, he was required to inform his supervisor and remain with the inmate until the inmate was taken to the clinic. Exhibit D – McDonald dep., 24:2-10; Exhibit C – DiMarzo Affidavit ¶ 14.

10.    Had McDonald mentioned suicide, DiMarzo would have followed the protocol described in ¶ 9, *supra*. Exhibit C – DiMarzo Affidavit ¶¶ 14, 17.

11.     Plaintiff McDonald told mental health staff, Melissa Ewing, that McDonald had "never" been suicidal during the night. Exhibit D – McDonald dep., 25:3-26:16.

12.     Defendant DiMarzo conducted his second security and accountability check at 10:32 p.m. Exhibit C – DiMarzo Affidavit ¶ 5.

13.     Plaintiff asked Defendant DiMarzo again if he would allow Plaintiff to go see the nurse. Defendant DiMarzo reiterated to Plaintiff that he would need to fill out a sick call form first. Exhibit C – DiMarzo Affidavit ¶ 5; Exhibit D – McDonald dep., 10:5-17.

14.     Defendant DiMarzo conducted extra security checks on Plaintiff. Exhibit C – DiMarzo Affidavit ¶ 8.

15.     Defendant DiMarzo conducted a third check on Plaintiff at 10:36 p.m. Exhibit C – DiMarzo Affidavit ¶ 8.

16.     Defendant DiMarzo conducted a fourth check on Plaintiff at 10:45 p.m. Exhibit C – DiMarzo Affidavit ¶ 8.

17.     Plaintiff McDonald did not tell Defendant DiMarzo during any of these checks that he had thoughts of self-harm or suicide. Exhibit C – DiMarzo Affidavit ¶ 14; Exhibit D – McDonald dep., 23:19-24:7 (McDonald told bunkmate, but did not use words like suicide, or self-harm when speaking to DiMarzo).

18.     At 12:07 am on October 31, 2023, a medical code was called for Plaintiff. Exhibit C – DiMarzo Affidavit ¶ 10; Exhibit F – Personal Injury Claim Form dated 11-12-23.

19.     Officers entered cell F123 and found that Plaintiff had made superficial cuts on his wrists. Exhibit C – DiMarzo Affidavit ¶ 14.

20.     Plaintiff was taken to the infirmary at 12:19 a.m. on October 31, 2023. Exhibit C – DiMarzo Affidavit ¶ 10; Exhibit D – McDonald dep., 23:3-4.

21.     Plaintiff was placed on a Crisis Level 3 on October 31, 2023, then reclassified as a Crisis Level 2 on November 1, 2023. Exhibit D – McDonald dep., 27:24-28:6; Exhibit E – Crisis Level Observation Placement and Removal, pages 2; 7.

22.     Plaintiff was released from the infirmary and no longer on a crisis level by November 9, 2023. Exhibit D – McDonald dep., 27:19-23.

23.     Kansas Administrative Regulation 44-16-104a(a), which dictates when an inmate must submit a personal injury complaint, requires the inmate to submit their complaint within ten (10) days after the alleged injury. Exhibit N - KAR 44-16-104a.

24.     Plaintiff first submitted a personal injury complaint on November 12, 2023. Exhibit D – McDonald dep., 29:3-33:9; Exhibit F – Plaintiff Deposition Exhibit 7.

25.     Plaintiff's initial personal injury grievance was denied on November 14, 2023, by Tevye Sturtz, Plaintiff's Unit Team Manager (UTM) for failure to attempt an informal resolution prior to submitting the personal injury complaint. Exhibit D – McDonald dep., 32:16-20, 34:5-21; Exhibit F, G – Plaintiff Deposition Exhibit 7, 8.

26.     Plaintiff then filed an inmate grievance. Exhibit D – McDonald dep., 37:10-40:3; Exhibit H – Plaintiff Deposition Exhibit 11.

27.     Plaintiff's inmate grievance was denied on November 15, 2023, by Unit Team Manager Tevye Sturtz as the incorrect process by which to seek a resolution for the complaint. Exhibit D – McDonald dep., 34:5-24, 36:25-37:4; Exhibit I – Plaintiff Deposition Exhibit 9.

28.     Plaintiff appealed this decision on November 16, 2023, to the Warden. Exhibit D – McDonald dep., 44:3-24; Exhibit J – Plaintiff Deposition Exhibit 15.

29.     Plaintiff's appeal to the Warden was denied on November 17, 2023. Exhibit D – McDonald dep., 44:3-24; Exhibit J – Plaintiff's Deposition Exhibit 15.

30.    IMPP 10-105D dictates how prison staff are to handle suicidal and potentially suicidal inmates. Exhibit K – IMPP 10-105D Facility Suicide Prevention Programs.

31.    IMPP 01-118D requires that inmate grievances for personal injury claims be submitted within ten (10) days of the alleged injury. Exhibit L – IMPP 01-118D Resident Claims Procedure for Property Damage/Loss or Personal Injury.

### Issues Presented

I.    **Plaintiff McDonald's claim is barred by failing to timely exhaust administrative remedies as required by the Prison Litigation Reform Act.**

II.    **Defendant DiMarzo was not deliberately indifferent to a serious medical need of Plaintiff's on October 30, 2023, and is entitled to Qualified Immunity.**

### Argument and Authorities

**A.    Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.*

The court must view the facts and resolve all factual disputes and reasonable inferences in favor of the non-moving party. *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1215 (10th Cir. 2013). However, a moving party need not disprove the nonmoving party's claims; rather, the movant need only point out a lack of evidence on an essential element of the other party's claim to establish it is entitlement to summary judgment. *See Adamson*, 514 F.3d at 1145. To overcome a fully briefed motion for summary judgment, the nonmoving party must set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find

for the nonmovant. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). In deciding

whether a genuine issue of material fact exists, the court need not accept plaintiff's conclusory

allegations. *Carpenter v. Sw. Bell Tel. Co.*, 27 F. Supp. 3d 1168, 1170 (D. Kan. 2014). Likewise,

"[i]nferences supported by conjecture or speculation will not defeat a motion for summary

judgment." *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006). "[T]he mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in

original).

**B.     Plaintiff McDonald failed to timely exhaust administrative remedies as required by the Prison Litigation Reform Act, which bars McDonald's claims.**

The Prison Litigation Reform Act (PLRA) "mandates early judicial screening of prisoner

complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Jones*

*v. Bock*, 549 U.S. 199, 202 (2007). These exhaustion requirements apply to all prisoner suits

seeking redress for violations of the Eighth Amendment. *Porter v. Nussle*, 534 U.S. 516, n. 2

(2002). The exhaustion requirement is also a total exhaustion requirement, and it applies to "all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Horton v. Ortiz*, 138 Fed. Appx.

104, 106 (10th Cir. 2005). Specifically, prisoners cannot bring an action under 42 U.S.C. § 1983

regarding conditions of confinement until the available administrative remedies are exhausted. 42

U.S.C. § 1997e(a). The prisoner plaintiff must go through the administrative process set by the

prison before filing suit in federal court, as required by the PLRA. *Estrada v. Smart*, 107 F.4th

1254, no. 20 (10th Cir. 2024); 42 U.S.C. § 1997e(a). *Timely* exhaustion is required. *Woodford v.*

*Ngo*, 548 U.S. 81, 83–84, 87 (2006) (grievance dismissed by prison officials because it was not

filed within the period provided by grievance procedures) "There is no question that exhaustion is

mandatory under the PLRA and that unexhausted claims cannot be brought in court."*Jones*, 549 U.S. at 211. "The Supreme Court has stressed, 'we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirement[ ].'" *Griffin v. Romero*, 399 Fed. Appx. 349, 351 (10th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 7 U.S. 41 n. 6 (2001)).

All remedies available to the plaintiff-prisoner must be exhausted, and the remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Porter*, 534 U.S. at 524; *Booth v. Churner*, 532 U.S. 731, 739 (2001). The U.S. Supreme Court found in *Woodford v. Ngo* that "proper exhaustion of administrative remedies is necessary" and that out of time or otherwise procedurally deficient "exhaustion" of the available administrative remedies will not grant the inmate the aright to file their complaint in court. 548 U.S. 81, 83-84 (2006).

Failure to exhaust is an affirmative defense that must be plead and proven by the defendant. *Jones v. Bock*, 549 U.S. at 216. The defendant meets this burden by proving that administrative remedies were available to the plaintiff and that the plaintiff failed to timely exhaust these remedies. *Purkey v. CCA Detention Center*, 263 Fed. Appx. 723, 726 (10th Cir. 2008). Further, the issue of whether Plaintiff timely and completely exhausted available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). As such, "unexhausted claims cannot be brought in court." *Id.*

The Kansas Administrative Regulations outline the grievance procedure for inmates wishing to pursue a personal injury grievance. *See* K.A.R. 44-16-104a. DSOF ¶ 23. The Regulations require the personal injury grievance to be submitted within ten (10) calendar days of the claimed injury in accord with the department of corrections' internal management policies and procedures. K.A.R. 44-16-104a(a)-(b). The internal management policies and procedures (IMPPs) in place for residents in custody of the Kansas Department of Corrections (KDOC) further outline

the process through which inmates are to submit their personal injury grievances. Specifically, IMPP 01-118D address the proper process by which inmates are to submit personal injury grievances. DSOF ¶ 31. IMPP 01-118D(II)(B) also requires personal injury claims to be submitted within ten (10) calendar days of the claimed injury with the proper form (Form #01-118D-001). DSOF ¶ 31.

McDonald did not submit his personal injury grievance within the ten (10) days after the incident and thus failed to properly exhaust his administrative remedies. McDonald's injury occurred on October 31, 2023, his last day to file his personal injury grievance on time would have been November 9, 2023. DSOF ¶¶ 14-15, 27. McDonald submitted his personal injury grievance on November 12, 2023, beyond the 10-day deadline. DSOF ¶ 20. McDonald's failure to follow the grievance procedures outlined by K.A.R. 44-16-104a and IMPP 01-118D as to the issues in the lawsuit constitutes precludes McDonald's claim. *Woodford*, 548 U.S. at 93.

Because McDonald failed to timely and properly exhaust available administrative remedies, Defendant DiMarzo is entitled to summary judgment against all McDonald's claims. *Woodford*, 548 U.S. at 83-84.

**B.    Defendant DiMarzo is entitled to judgment on the merits because he was not deliberately indifferent and is entitled to qualified immunity**

Defendant DiMarzo is entitled to summary judgment because he was not deliberately indifferent to Plaintiff McDonald's serious medical need(s) and he is entitled to qualified immunity. Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff" to demonstrate a constitutional violation. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In evaluating whether the defendant violated a constitutional right, the court

conducts a two-pronged test asking whether "(1) the defendant violated [the plaintiff's] constitutional statutory rights; and (2) [whether] the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts should that the right must be as [the] plaintiff maintains." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010).

When evaluating these prongs, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Where the plaintiff fails to satisfy either prong, the defendant officer is entitled to qualified immunity. *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). Here both prongs support qualified immunity for Defendant DiMarzo.

An inmate's right to adequate medical care is violated if the prison officials acted with "deliberate indifference to [the] serious medical needs" of the prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104(1976); *and see Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). There are no facts within the record which show that Defendant DiMarzo was deliberately indifferent to any medical need of Plaintiff McDonald.

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A constitutional violation occurs only if the deprivation alleged is "objectively, sufficiently serious." *Id*. at 834. *Farmer* analogized this standard to criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of serious harm. *Id*. at 836-38. "Deliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard*, 80 F.3d 1433, 1442

(10th Cir. 1996) (citation omitted). An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of a substantial risk of serious harm*." *Farmer*, 511 U.S. at 842 (emphasis added). "'[A]n inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs*, 563 F.3d at 1088, (quoting *Estelle*, 429 U.S. at 105–06)).

The objective part of the deliberate indifference analysis can be shown by alleging facts of a deprivation that is sufficiently serious. *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1155 (10th Cir. 2022), 143 S. Ct. 2658 (2023). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted); *see also Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018).

To satisfy the subjective component, the prison official "must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). The plaintiff must show that the defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. That is, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id. See also Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (Plaintiff "must show that the defendant[] knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.").

"[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. "[A] factfinder may conclude that a prison official knew of a

substantial risk from the very fact that the risk was obvious." *Id.* In the realm of inmate suicide attempts, the Tenth Circuit requires the plaintiff to show that the official knew the plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Heidel v. Mazzola*, 851 Fed. Appx. 837, 840 (10th Cir. 2021). And even if an official knows of (i.e., is subjectively aware of) a substantial risk to inmate health or safety, that official may nevertheless "be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Therefore, a prison officer who responds reasonably to a known risk cannot be said to have "disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837.

A plaintiff alleging an Eighth Amendment violation for failure to render appropriate medical care to a suicidal inmate, the plaintiff must show that the defendant had subjective awareness of the plaintiff's risk of suicide. *Heidel*, 851 Fed. Appx. at 840. Where there is no evidence that the plaintiff-inmate mentioned suicidal thoughts or ideation to the defendant officer, the officer does not have this subjective awareness as required for a violation of the Eight Amendment. *Id*. Rather *knowledge* about a specific risk of suicide is required. *Id*. *See also*, *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015) (defendant must possess knowledge that a specific inmate presents a substantial risk of suicide).

DiMarzo did not violate McDonald's civil rights by acting with deliberate indifference towards McDonald. Inmate suicide claims "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand County*, 119 F.3d 862, 866 (10th Cir. 1997). For inmate suicide claims, deliberate indifference arises when a prison official has "subjective knowledge that person is a substantial suicide risk." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (10th Cir. 2021). *See also, George v. Beaver County*, 32 F.4th 1246, 1256 (10th Cir. 2022). For prison officials incur liability for deliberate indifference plaintiff

must show "that a specific inmate presents a substantial risk of suicide" and the individual defendant disregarded that risk. *Cox*, 800 F.3d at 1249–50.

McDonald told Dimarzo of "hearing voices," wanting to speak with the nurse, and not wanting to go on crisis level. McDonald did not tell DiMarzo of any thoughts of self-harm or suicide. DSOF ¶¶ 5, 7. Thus, DiMarzo did not have subjective knowledge of, nor did he deliberately disregard, any obvious risk of self-harm or suicide by McDonald. McDonald did not convey a desire for self-harm and didn't mention suicide and, thus, DiMarzo lacks "subjective knowledge" of a "substantial risk of suicide." *See Crane*, 15 F.4th at 1307. *See also Estate of Burgazv. Bd. of Cnty. Commissioners for Jefferson Cnty. Colorado*, 30 F.4th 1181, 1188 (10th Cir. 2022) (Where there were no allegations that the inmate had expressed to the defendant that the inmate "expressed suicidality or intentions to harm herself[,]" the officer was not on notice of any immediate risk.); and *George*, 32 F.4th at 1259 (prisoners "have claims against their custodians for failure to provide adequate medical attention, including jail-suicide claims, *only* when the custodian knows of the risk involved and is deliberately indifferent to it" (emphasis added)). \DiMarzo,  conducted several extra checks on McDonald's cell, speaking with McDonald each time, and McDonald did not inform DiMarzo that he presented an active suicide risk to himself. As such, Defendant DiMarzo acted reasonably in light of the information he did have from McDonald. At most, DiMarzo could have known that he was dealing with a distressed inmate, but there were no obvious indicators of suicide present. *Est. of Burgaz*, 30 F.4th at 1188.

However, even in Plaintiff framed this case as DiMarzo's failure to "ensure that certain standard operating procedures for suicidal inmates were followed," such a failure "does not rise to the level of deliberate indifference because failing to follow operating procedures to their letter does not per se demonstrate deliberate indifference.*" Lieberenz v. Bd. of Cnty. Commissioners of the Cnty. of Saguache*, 2023 WL 1767260, at \*19 (D. Colo. Feb. 3, 2023); *see also Heidel v.*

*Mazzola*, 851 Fed. Appx. 837, 841 (10th Cir. 2021); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (Holding that "an officer's failure to follow internal jail policies does not automatically mean her or she acted with deliberate indifference."). Even though IMPP 10-105D(III)(A) states that staff is required to refer any residents "who exhibits behavior which is suggestive of potential suicide to qualified health care professionals[,]" any failure to follow this policy "to the letter" would not be enough to show that DiMarzo acted with deliberate indifference to any serious medical need of McDonald's.

DiMarzo had no other information from McDonald or about McDonald showing McDonald presented any obvious suicide risk. *See Est. of Hocker v. Walsh*, 1993 WL 664646, at *9 (W.D. Okla. Jan. 14, 1993) (concluding that, "[a]bsent any *knowledge of a risk that [inmate] would commit suicide*, the failure of jail personnel to take extra precautions, e.g., to monitor [his] cell more frequently is, at best, negligence") (emphasis added).

The second prong of the qualified immunity inquiry also supports qualified immunity for Defendant DiMarzo. No clearly established law existed in October of 2023 such that a corrections officer would have known his conduct would be a constitutional violation. "The plaintiff bears the burden of citing to [the court] what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). No Supreme Court division has established a right to "proper implementation of adequate suicide prevention protocols." *Taylor v. Barkes*, 575 U.S. 822, 826 (2015); *see also Heidel*, 851 F. Appx. at 840 (Tenth Circuit case law has "typically required knowledge about a specific inmate's risk of suicide."). To date, neither the U.S Supreme Court, nor the Tenth Circuit has held that a corrections officer who told an inmate to fill out a sick call instead of calling the nurse or mental health when the inmate was requesting medical services without saying that they were actively suicidal was deliberately indifferent to the serious medical needs of the inmate.

The only comments made to DiMarzo by McDonald was that McDonald was "hearing voices," that he "didn't want to go on crisis level," and wanted to talk to a nurse. DSOF ¶ 5. McDonald agrees these were the only things he said to DiMarzo on October 30, 2023. DSOF ¶ 7. Without more, DiMarzo cannot be found to have been on notice of any substantial risk of suicide or self-harm. Nor does DiMarzo's instruction that McDonald fill out a sick call amount to deliberate indifference to a serious medical need. Though McDonald claims the aversion to "going on crisis level" could should have been viewed as an expression of self-harm or suicidal ideation, it is "susceptible to a number of interpretations." *Heidel*, 851 F. Appx. at 840 (ambiguous statements or behavior that *could* be viewed as suicidal characteristics do not provide the required knowledge about a specific inmate's risk of suicide). Thus, McDonald's ambiguous statements fail to rise provide the requisite knowledge that might give rise to a claim for deliberate indifference to a serious medical need.

DiMarzo is entitled to judgment as a matter of law on both prongs of the qualified immunity analysis—he lacked subjective knowledge of a specific risk of suicide and no clearly established law would have informed an officer in DiMarzo's position that he needed to do anything more or different.

### Conclusion

The court need not reach the claim of liability and should dismiss this matter for McDonald's failure to timely exhaust administrative remedies are required by the PRLA.

The material facts, which are not in dispute, do not indicate that Defendant DiMarzo knew of and disregarded an obvious risk that McDonald would commit or attempt suicide. DiMarzo is entitled to qualified immunity because his conduct neither violated McDonald's constitutional rights, nor did clearly established law exist such that an officer in DiMarzo's position would have known that his conduct would constitute a violation.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | ksittenauer@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                                          #16690
Katherine E. Sittenauer                                  #29903
**Attorney for Defendant DiMarzo**

## Certificate of Service

On March 10, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

I further certify that I caused the foregoing document to be mailed by first-class mail to the following non-CM/ECF participant:

Sean E. McDonald #113183
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043
*Pro Se* **Plaintiff**

**s/David R. Cooper**